## Louis Weick

### *v.*

## George Lander, Administrator.

1. NEGLIGENCE — *obstructing public street.* Where an act is done which is unlawful in itself, such as placing an obstruction in a public street or highway which detracts from the safety of travelers, the author of it will be held liable for an injury resulting from the act, although other causes subsequently arising may contribute to the injury.

2. SAME — *unlawful act.* Where an act unlawful in itself is done, from which an injury may reasonably and naturally be expected to result, the injury, when it occurs, may be traced back and visited upon the original wrong-doer, and this upon the principle that every person shall be held liable for all those consequences resulting from his unlawful act which might have been foreseen and expected as the result.

3. Where a contractor for the erection of a house in the city of Chicago placed a lot of brick in one of the most public streets, in violation of the ordinances of the city, and on the opposite side of the street there was a pile of lumber, and owing to these and other obstructions it was difficult for teams to pass each other without a collision, and it appeared the plaintiff had two teams engaged in hauling sand, and that while they were returning with their loads the plaintiff's son, aged about twelve years, got upon the back part of the foremost wagon, and while occupying a seat with his back to the tail-board, the wagon was suddenly stopped by a collision with an express wagon at the place of the obstruction, and the driver of the rear wagon, watching to avoid a collision on his part, did not observe the stoppage of the front wagon until he was very near it, and in attempting to stop his wagon the tongue was elevated and struck the boy in the abdomen inflicting a wound causing his death: *Held,* in a suit by the plaintiff, as the personal representative of the deceased, that the contractor was liable, and the injury must be traced to the first wrong — the obstruction of the street by him.

4. SAME — *negligence of party injured.* In an action to recover damages for causing the death of a boy aged twelve years, through negligence or wrongful act of the defendant, in which negligence is also attributed to the deceased, the jury, in passing upon the question of negligence in the latter, should take into consideration his age and experience, as the law does not require the same degree of care and caution from a young boy as from one of mature years.

APPEAL from the Superior Court of Cook county ; the Hon. SAMUEL M. MOORE, Judge, presiding.

Messrs. UPTON, BOUTELL & WATERMAN, for the appellant.

Messrs. HERVEY, ANTHONY & GALT and Messrs. BRANDT & HOFFMAN, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court :

This was an action brought by George Lander, father, and administrator of the estate of George T. Lander, against Louis Weick, to recover damages for an injury received by the son which resulted in his death.

A trial of the cause was had before a jury, which resulted in a verdict of $2,000 in favor of the plaintiff.

The defendant, Weick, brings the record here by appeal, and relies, in his argument, upon a reversal of the judgment upon the following grounds :

1st. That the obstruction of the street by the brick pile was not the proximate cause of the accident.

2d. That the accident was not the natural and probable result of the obstruction of the street by the brick pile.

3d. That the deceased was not in the exercise of such a degree of care as will entitle the plaintiff to recover.

4th. That the driver in whose custody the boy was, did not exercise ordinary care in allowing the boy to ride where he did, or in the management of his team at the time of the accident.

At the time the accident occurred certain buildings were in process of erection by appellant upon the west side of North

Wells street in Chicago, for the estate of Walter L. Newbury, deceased.

Appellant had the sole control of the mason work and all material to be used in the construction of the buildings. The street was eighty feet wide, the sidewalk on each side of the street was sixteen feet wide, which left forty-eight feet for the roadway.

The street, although paved, and a thoroughfare much used, was obstructed by a large pile of brick extending from the sidewalk on the west, east about thirty-three feet. Opposite this, on the east side of the street, was a pile of lumber; there were also lime, sand and mortar in the street.

On the east side of the street, nearly opposite the brick pile, was a scale hole eight feet wide, and twelve feet long, which had been filled to near the surface of the street with dirt and brickbats.

The obstruction was so great that it was difficult for teams to pass each other; some of the witnesses testified that owing to the obstructions, teams were frequently stopped.

The ordinances of the city prohibited, under a penalty, the obstructing of any street with building material without a permit from the board of public works; no permit had been obtained by appellant.

On the day of the accident the father of the deceased had two teams hauling sand from Lake View to the central part of the city. In the afternoon, when the teamsters started for sand, the deceased, a boy twelve years old, went with them. When they obtained their loads and started, the deceased rode upon the rear wagon until within about a half mile of where the accident occurred; he then got down and walked several blocks, and then got upon the rear part of the front wagon and occupied a seat formed by the projection of the plank forming the bottom of the wagon-box beyond the tail-board.

The deceased sat with his back to the tail-board, and his face to the north. The teams were going south; as the front sand team came near the pile of brick, a wagon passed going north;

following this was an express wagon; one hub of the express wagon struck the hub of the sand wagon, the other hub struck the pile of lumber, while the west hub of the sand wagon encountered the pile of brick, and the team was suddenly stopped. The driver of the rear wagon was watching the wagon going north, in order to avoid a collision, and did not notice that the front team had been stopped until he was near it; he then attempted to stop his team, but he had gone too far; the tongue of his wagon struck the deceased in the abdomen and inflicted a wound, which in a few days caused his death.

It is difficult in many cases to determine when the cause of an accident is to be considered proximate, and when merely remote.

There is, however, one feature in this case which will necessarily have an important bearing in the determination of the liability of appellant. In obstructing the street he did an unlawful act—an act prohibited by positive law. An act of an individual done to a public street or highway, if it detract from the safety of travelers, is a nuisance, and special damage arising from it furnishes ground for a private action. *Dygert* v. *Schenck*, 23 Wend. 446.

We understand the rule to be, that where an act done is unlawful in itself, the wrong-doer will be held responsible, although other causes may have subsequently arisen and contributed in producing the injury; that where an act unlawful in itself is done, from which an injury may reasonably and naturally be expected to result, the injury, when it occurs, will be traced back and visited upon the original wrong-doer.

This arises from the principle, so clearly stated by Parsons in his work on Contracts, vol. 2, page 456: "That every defendant shall be held liable for all those consequences which might have been foreseen and expected as the results of his conduct, but not for those which he could not have foreseen, and was therefore under no moral obligation to take into consideration."

It will not be necessary to enter upon an extended review of the many authorities on what may be regarded as the proxi-

mate or remote cause of an injury. The citation of a few, lead-
ing in their character, will be sufficient to settle the principle
involved in this record.

The familiar case of *Scott* v. *Shepard*, 2 Black. Rep. 892,
is a strong one illustrating the responsibility of the first wrong-
doer, although others contributed in producing the injury.
Shepard threw a lighted squib into a market-house where many
people were assembled; it fell on the standing of Yates, and, to
prevent injury, it was thrown across the market-house and fell
upon the standing of Ryal, who, to save his own goods, threw
it to another part of the market-house, and in so throwing it
the plaintiff was struck in the face, the squib exploded and put
out one of his eyes. It was held that throwing the squib was
an unlawful act, and that whatever mischief followed, the person
throwing it was the author of the mischief. All that was done
subsequent to the first throwing was but a continuation of the
force and first act; the blame lights upon the first thrower; the
new direction and new force flow out of the first force.

The principle announced is, that whoever does an unlawful
act is to be regarded as the doer of all that follows.

In the case of *Illidge* v. *Goodman*, 24 English Common Law,
272, the servant of the defendant left a horse hitched to a cart
standing in the street; a passer-by struck the horse upon the
head and he backed the cart into the plaintiff's window and
damaged certain goods. The defendant was held liable for the
damage, although the backing of the cart into the plaintiff's
window was caused by the act of a stranger. The court said:
" If a man choose to leave a cart standing in the street he must
take the risk of any mischief that may be done."

In a later case of *Lynch* v. *Nurdin*, 41 English Common
Law, 422, where the servant of the defendant left a horse and
cart on the street without any person to take care of them, the
plaintiff, a boy seven years old, and other children were about
the cart; in the absence of the cartman the plaintiff got upon
the cart and another boy led the horse on; in attempting to get

out of the cart the plaintiff fell, was run over by the wheel and his leg broken.

The defendant, owner of the cart, was held liable for the injury.

In delivering the opinion, it was said by the court, "If I am guilty of negligence in leaving any thing dangerous in a place where I know it to be extremely probable that some other person will unjustifiably set it in motion to the injury of a third, and if that injury shall be so brought about, I presume that the sufferer might have redress by action against both or either of the two, but unquestionably against the first." See also *Greenland* v. *Choplin*, 5 Exch. 243.

The weight of authority in the United States, upon this question, is in harmony with the doctrine announced in the courts of England. *Fent* v. *T. P. & W. R. W. Co.* 59 Ill. 349; *Lane* v. *Atlantic Works*, 107 Mass. 104; *Powell* v. *Deveny*, 3 Cush. 300; *Sheriden* v. *Brooklyn & N. R. R.*, 36 N. Y. 39; *Griggs* v. *Flekenstein*, 14 Minn. 81.

The appellant had been a builder in Chicago, for several years; he not only knew the obstructions placed in the street were unlawful, but he was aware of the fact that the street, where the accident occurred, was a public thoroughfare; knowing these facts, he must have known the direct and necessary consequence of the obstruction placed in the street would be to impede travel, and accidents would follow.

It is no answer for him to say the sand team was stopped by coming in collision with the express wagon; he must have known that, owing to the demands of the traveling public, teams would be compelled to pass each other at the place of the obstruction, and in the proportion to the obstruction placed in the street and the hindrance to travel, collisions must follow, and would be attended with accidents serious in character.

Had it not been for the obstruction, the sand team could have passed the street without coming in collision with other teams, but, owing to the obstruction, the space between the pile of brick on the one side of the street and the pile of lumber on the

other, would not allow two teams to pass; the result was, the sand wagon was forced against the pile of brick and stopped; the obstruction in the street caused the wagon to stop; the result of the wagon being stopped by the obstruction, was, the deceased lost his life.

It is true, the sand wagon contributed to the injury, but the cause must be traced back to the original and first wrong, the obstruction of the street.

We now come to the consideration of appellant's third point: that the deceased was not in the exercise of such a degree of care as will entitle the plaintiff to recover. It is said, the seat occupied by the deceased was a dangerous place, and it was gross carelessness on his part to thus expose himself to danger.

It is not to be expected that a boy twelve years old will use the same degree of caution and care as a person of mature years, nor does the law require it; it was proper for the jury in passing upon the negligence of the deceased to take into consideration his age and experience. This being done, his position could not be regarded as an act of negligence on his part. *Kerr* v. *Forgue*, 54 Ill. 482; *Chicago and Alton R. R. Co.* v. *Murray*, 62 Ill. 326.

It is however urged the teamsters were guilty of negligence.

The day of the accident was the first time the teamsters had been upon the street after the obstructions were placed upon it. They had reason to suppose the street would be clear of obstruction so they could pass without hindrance or difficulty. They knew nothing of the obstruction until it was encountered by them.

Just before the accident occurred the driver of the second team had his entire attention taken up to avoid a collision with the wagon going north ahead of the express wagon. It was his duty to use all reasonable efforts to avoid coming in contact with this wagon. This he was doing, and while in the discharge of this duty, which would not have devolved upon him had the street been clear of the obstructions, he did not observe the team ahead of him had stopped until it was too late.

It is, however, urged he ought not to have permitted the deceased to occupy the seat he did.

At the place the boy got upon the front wagon the street was clear of all obstruction, and, so far as was apparent, he would be as free from danger in that position as he would on any other part of the wagon. The deceased was not directly in the charge of either of the teamsters, but even if he was, we do not perceive, under all the circumstances, that they failed to exercise a proper degree of care.

But if any negligence is to be imputed to the teamsters or the deceased, it could not be regarded otherwise than slight in comparison with that of appellant, which was gross.

The judgment of the Superior Court will be affirmed.

*Judgment affirmed.*