Granger, C. J.
We are satisfied that the railway company violated section thirty-one (31) of the act relating to roads and highways, passed March 9,1868, (S. &. S., 669,) and thereby became “liable for all damages arising to any person from such obstruction.”
Counsel upon both sides have aided the court by able and carefully prepared arguments citing and commenting upon the numerous cases in which the question “ What was the proximate cause of the injury? ” has been discussed by American and English courts.
Judge Cooley, at page 69 of his work on Torts, thus briefly states the test:
“If the wrong and the resulting damage are not known by common experience to be naturally and usually in *123 sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the wrong and the damage are hot sufficiently conjoined or concatenated, as cause and effect, to support an action.”
Apply this to the noted “ Squib ease,” Scott v. Shepherd, 2 W. Bl., 892. As soon as the fire reaches the explosive material in the squib an explosion naturally and usually follows. If, when thrown, it falls so near a person, that, to pick it up and cast it hurriedly elsewhere is the obvious means of escape from harm, such action naturally, and, we may add, usually follows. If this thus occurs in a crowded market space, the natural and usual result would be injury to some one other than the person at whom it was first' thrown. So long as the act of the second thrower is the result of mere impulse to avert danger to himself by removing the dangerous thing to a distance, the first thrower’s act is in progress. But if the second thrower deliberates, even for a mere instant, and, with intent to injure a third person, casts the squib at him, such deliberation and intent puts an end to the act of the first thrower, and the thing done by the second thrower is not his fault.
So also if a wholesale druggist prepares a jar of belladonna, labels it “ extract of dandelion,” and sells it as such to a retail dealer, who uses it as “ extract of dandelion ” in filling a prescription: the great suffering of the patient, who takes the medicine so prepared, is plainly the natural and usual result of the act of the wholesale dealer. In the case referred to, the defendant prepared the jar to be sold to a retailer whose regular business it was to incorporate it in prescriptions to be swallowed by patients. The “ concatenation ” of Judge Cooley is particularly complete in this case of Thomas v. Winchester, 6 N. Y., 397.
In Clark v. Chambers, 7 Cen. L. J., 11, the defendant wrongfully placed a dangerous spiked hurdle in a private way, along which the plaintiff had a right to pass. Some person, without the defendant’s knowledge, moved it a short distance, but left it still in the same private way. The plaintiff passing on a dark night, with knowledge of the original *124 position of the hurdle, thinking to avoid it, came into collision with it and was injured.
Having unlawfully placed the dangerous movable thing in a passage-way, so long as it remained in that way, it was there by the defendant’s act. That such a movable thing in such a place would be moved by some passer-by, is, it seems to us, natural and not unusual; and he who originally placed it there should be held to contemplate such a possibility, and be responsible for results so long as he suffers it to remain in that way.
And we see Judge Cooley’s “ concatenation ” in Griggs v. Fleckenstein, 14 Minn., 81, and Weick v. Lander, 75 Ill., 93. The injury complained of in each of these cases, by a plain, clear and simple chain of cause and effect was “ conjoined” to the wrongful act' of the defendant, and was the result of its continuing force. In the Minnesota case the action of the defendant’s team frightened other horses and, we may well say, forced them against the horse and sleigh of the plaintiff. In the Illinois case the stoppage of the foremost wagon by defendant’s fault forced the stoppage of the second wagon in such a position that the tongue of the third wagon, ex necessitate, passed into the second wagon and did the injury complained of. The like continuing force of the wrongful act is apparent in Brown v. The Railway, 54 Wis., 342, and Drake v. Kiely, 93 Penn. St., 492.
In the Wisconsin case the wrongful act caused a pregnant woman to leave the train three miles short of her destination on a,cloudy night. This act forced her to walk to the station. This effort caused the injury.
In the Pennsylvania case the “lad of tender age” was' wrongfully and forcibly put upon a train, carried five miles and there put off. This act forced him to go over the five miles. The doing this caused the injury. In each case the precise thing that did the injury was forced upon the injured person by the wrongful act of the defendant.
But the fact that she walked around the train was not the cause of Mrs. Staley’s injury. Other persons that night walked ■ around the same train without harm. In the full *125 possession of her faculties, she passed safely around the obstruction and beyond its influence; she was walking in a street in which others were then safely walking; she stepped upon a small pile of ice without necessity. She could, at will, have gone on either side of it; she might have, walked between the rails of the unoccupied track, from which the snow and ice had been removed, until she arrived at the usual crossing of Center street, from which the train (before she passed around it) had excluded her. The turning to cross that track in order to there cross the street was a voluntary act on her part. It was a selection of one of several convenient routes to her home. We are unable to see any chain of cause and effect leading back from it to the obstructing train. True, if the train had not blocked the way, she would not probably have been at the turn in Railroad street at the point where she decided to cross that street; but so long as the obstructing train did not compel her to take that precise route, and step on that pile of ice in order to reach her home without undue delay, her decision to there attempt to cross that street was in no sense, in no particular, forced by that train; hence it did not cause her fall.
The charge attempted to trace a possible “ concatenation ” of cause and effect by stating “ that if the evidence shows that prior to the time in question, the agents and servants of the company were in the habit frequently of blocking this same street by its cars unlawfully and negligently, and for more than five minutes, and persons thus prevented from crossing the street were accustomed to pass around the end of the train west of Center street, down Railroad street, and there cross the tracks and highways substantially as was done by the plaintiff, and these facts were known to the officers and agents of the company, that in such case the jury should determine under such circumstances whether the result which followed to Mrs. Staley might reasonably have been anticipated by the company, the defendant, and if you find that it might, and there was no fault on the part of the plaintiff, the company in that would be liable.”
*126 As no evidence tended to show that prior to that night any one fell while passing there, we do not perceive how knowledge by the company that people were in the habit of following the route taken by her, without any fall or injury, would make her fall a “ usual and natural ” result of the obstruction of Center street by a train; or that such fall “ might reasonably be anticipated by the company.”
It seems to us that unless the company was at fault in placing the ice where she trod upon it and fell, no verdict ought to have assessed upon the defendant any damages for that fall.
While we thus hold that the pile of ice was the proximate cause of Mrs.. Staley’s fall, we agree with the cases cited by her counsel, that in such cases “ the question as to whether the cause was remote or proximate is for the jury, under the instruction of the court.” But we think that the charge as given misled the jury, and that the evidence, as set out in the bill of exceptions, clearly proves that the act of stepping on the ice where she fell was not forced by the train, but was the result of her own choice of route after the train had ceased to be an obstruction to her. The court should apply the law to those facts; and as we understand it, such application determines that the position of the train was not the proximate cause of the fall.
A demurrer to the petition raised the question whether the latter charged the company with any fault in the matter of the ice. Perhaps it may be construed as averring, in substance, that the blocking of the street compelled her to step upon the ice placed by the defendant, and that while so stepping, under such compulsion, she, without her own fault, fell. If this be so, the demurrer was rightly overruled.
We deem it unnecessary to consider the other alleged errors.
Judgments below reversed, and cause remanded for a new trial.