## Mobile and Ohio R. R. Co. v. Albert J. Harmes.

52   649
58   185

52   649
72   214
72   217

1. MASTER AND SERVANT—*Master's Duty to Furnish Safe Appliances.* —The law imposes upon the master the duty of exercising reasonable care in supplying the servant with proper and safe instrumentalities for the performance of his duties and maintain the same.

2. MASTER AND SERVANT—*Efficient Method of Discharging the Duty.* —In the operation of cars an efficient and necessary method of discharging that duty is to maintain a careful system of inspection to see that the necessary appliances in use thereon, are in good order and sufficient to answer the purpose for which they are intended.

3. MASTER AND SERVANT—*To What the Rule Applies.*—The rule of reasonable care in supplying the servant with proper and safe instrumentalities, applies in the case of cars belonging to other companies, which the servant is required to operate in the course of the master's business.

4. MASTER AND SERVANT—*Corresponding Duty of the Servant.*—The servant using the appliances furnished by the master, in the necessary performance of the work he is employed to do, must exercise reasonable care for his personal safety. Such care as a reasonably prudent person would take under like circumstances. This is a duty imposed by the law and the use of reasonable diligence to discover defects in such appliances is one of the means of discharging that duty.

5. MASTER AND SERVANT—*Whether the Master has Exercised Such Care, a Question for a Jury.*—Whether the master has exercised the reasonable care required of him by the law, and the servant has also exercised the reasonable care so required of him, are questions of fact to be determined by the jury from the evidence.

6. MASTER AND SERVANT—*Notice to Employes as to Defects in Appliances, etc.*—Where a notice printed as a part of the official time table of a railroad company compelled its employes to know whether the property with which they had to work was in good and safe condition, *it was held* that the notice did not impose upon the employe a duty different from that required by the law, and if the employe used reasonable care to inform himself, and the appliances appeared not unsafe, he can not be charged with negligence notwithstanding the notice.

7. JURY—*The Judges of the Credit to be Given to the Testimony.*— The jury, who see and hear the witnesses when testifying, are the judges of the weight and credit to be given to their testimony, and the verdict ought not to be disturbed unless it is apparent they have misunderstood or disregarded the evidence or were misinformed as to the law.

8. VERDICTS—*When Not to be Set Aside.*—Where there is an irreconcilable conflict in the testimony, this court will not reverse the judgment where the evidence of the successful party, when considered by itself, is clearly sufficient to sustain the verdict.

9. DAMAGES—*When Excessive.*—The amount of damages is a question for the jury to determine, and unless the amount is so large as to indicate that the jury in fixing it were influenced by passion or prejudice, the verdict ought not to be set aside on the ground of excessive damages.

10. PLEADING—*Defects and Omissions After Issue Joined—Cured by the Verdict.*—When there is a defect, imperfection, or omission in any pleading, either in form or substance, which would be fatal on demurrer, if the issue joined thereon be such as necessarily requires, on the trial, the proof of the facts so defectively stated or omitted, and without such, it is not to be presumed the judge would direct the jury to give, or the jury would have given, the verdict, such defect or omission is cured by verdict.

**Memorandum.**—Action for personal injuries. In the Circuit Court of Jackson County; the Hon. JOSEPH P. ROBARTS, Judge. presiding. Declaration in case; plea, not guilty; trial by jury; verdict and judgment for plaintiff; defendant appeals. Heard in this court at the August term, 1893, and affirmed. Opinion filed March 23, 1894.

Copy of notice referred to in the opinion:

" SPECIAL NOTICE.

It is the settled policy of this company not to have in use any tools, implements, cars or machinery that may be unsafe to handle, and it is the duty of every employe to know that the property with which he has to work is in good and safe condition, and if not, to report the fact to his immediate superior at once, and to the superintendent as soon as practicable; and should such employe continue to use such unsafe property or machinery, he does it at his own risk."

STATEMENT OF THE CASE.

Appellee brought this suit against appellant to recover damages for personal injuries, alleged to have resulted from the negligence of defendant in furnishing him with a car in a train of cars, with a chain attached to a brake-rod upon said car, which chain was necessary to be used in setting the brake thereon, and was old, unsound, weak, defective and unfit for use, and dangerous to be used by appellee, a brakeman in appellant's employ, in setting the brakes upon said car, and while he was engaged in performing his duty in

setting the brakes upon said car, and particularly while attempting to perform his duty as brakeman by setting the brake, to the brake-rod of which was attached said old, rusty, unsound and defective chain, and while exercising due care for his own safety, and not then aware that said chain was in an unsound, unsafe and dangerous condition, or unfit for use, said chain did break by reason of its unsoundness, weakness and unfitness for use, and appellee being on the top of said car, and while attempting to set said brake, said chain broke, and by reason of its breaking he was thrown upon the defendant's railroad track, was run over by defendant's said cars, his left arm so broken and mangled that amputation became necessary, and said arm was amputated, and other injuries resulted which are specifically averred. The second count is similar to the first, except it is averred that the defective appliance which broke and caused the injury, was an unsound, insecure, unsafe and dangerous fastening to the brake-staff, called an eyebolt, to which the brake-chain was attached, and which broke and gave way by reason of being insecurely fastened, defective, unsound, unsafe and dangerous. The jury returned a verdict finding defendant guilty and assessed plaintiff's damages at $5,000. Judgment was entered on the verdict for that sum and costs, and defendant took this appeal.

LANSDEN & LEEK, attorneys for appellant.

R. T. LIGHTFOOT, attorney for appellee.

MR. JUSTICE GREEN DELIVERED THE OPINION OF THE COURT.

Appellant contends that before appellee could rightfully recover, the law required him to establish by the greater weight of the evidence the two following propositions:

1st. That the brake-chain or eyebolt in question, was defective in the respect charged in the declaration, and that defendant knew of such defect, or by the exercise of ordinary care, could have ascertained the same.

2d. That plaintiff did not know of such defect, and that

he could not, by the exercise of ordinary care, have ascertained the same.

The law imposes upon the master the duty of exercising reasonable care in supplying the servant with proper and safe instrumentalities for the performance of his duties, and maintaining the same. C. & A. R. R. Co. v. Kerr, Vol. 35, N. E. Rep. p. 1118. In the operation of cars an efficient and necessary method of discharging that duty is to maintain a careful system of inspection to see that the necessary appliances in use thereon, are in good order and sufficient to answer the purpose for which they are intended, and this rule of reasonable care with reference to proper machinery and inspection, applies in the case of cars belonging to others, which the servant is required to operate in the course of the master's business. Sack v. Dolese et al., 137 Ill. 129.

The servant using the appliances furnished by the master, in the necessary performance of the work he is employed to do, must exercise reasonable care for his personal safety; that is, such care as a reasonably prudent person would take under like circumstances. This is a duty imposed by the law, and the use of reasonable diligence to discover defects in such appliances, is one of the means of discharging that duty. Whether the master has exercised the reasonable care required of him by the law, and the servant has also exercised the reasonable care so required of him, are questions of fact to be determined by the jury from the evidence.

The foregoing rules are applicable to the facts in this case, and have been announced as the law in repeated decisions of the Supreme Court and the Appellate Courts of this State. Counsel for appellant insist that appellee failed to establish by a preponderance of the evidence, that he did not know of the existence of the alleged defects in said appliances, and could not, by the exercise of ordinary care, have ascertained the same. We think the evidence justified the jury in finding that appellee did not know of the existence of the defects, and had used the ordinary care required by the law to ascertain the condition of the said appliances

before starting on his trip, taking into consideration the opportunity afforded him and the duties the master required to be performed by him before the train left, and that he was not guilty of negligence in this regard. In this connection it is said the printed notice to employes, read in evidence, compelled appellee to *know* whether the chain and eyebolt in question were in good and safe condition. We are not prepared to hold this notice imposed a duty upon him different from that required by the law, and we think if he used reasonable care to inform himself, and the appliances appeared not unsafe, he could not be charged with negligence, barring his right to recover.

It is insisted, also, that appellee failed to establish by the greater weight of evidence, that the brake-chain or eyebolt in question was defective in the respect charged in the declaration, and that defendant knew of such defect, or by the exercise of ordinary care, it could have ascertained the same. The car was a box car, loaded with sugar, and was received by appellant at Meriden, Mississippi, to be transported over its line to St. Louis, Missouri. The evidence satisfies us it was an old car, and that appellant, by its servants, who acted as car inspectors, knew that fact, or by exercising reasonable diligence might have known it, and hence ought to have known the appliances thereon were likely to be old and worn and probably unfit to be used for braking on a heavily loaded car, which was to be transported so great a distance. Full opportunity was given the inspectors, if on duty as they ought to have been, at different points along the line to examine these appliances in the day time, and had any one of them carefully made such examination, the defects, if they existed, must have been discovered, and if the appliances in fact were defective at the time of the accident, it would be a fair inference under the evidence, that the inspectors knew it, or by using reasonable diligence could have known it in ample time before the accident, to supply those that were reasonably safe. The main contention, however, on behalf of appellant, is that the evidence does not support the averments that the brake-chain was

defective, or the eyebolt defective or insecurely fastened. Moore, a car inspector in defendant's employ at time of accident, testified he examined brake-chain and connections in question carefully at 5:30 A. M., and immediately after it occurred, when the train stopped in Murphysboro, the first stop, and one mile and a half from place of accident; that the chain was old, worn out and broken, worn thin at the ends where the links joined; that one link was missing; one link also was cracked.

As corroborative of this statement that the chain was old and worn and the eyebolt either defective from like causes or insecurely fastened, is the fact already mentioned that the car to which the same were attached was an old car, and the further facts that the chain was broken, and the eyebolt not to be found. But we are told this witness is not to be believed and we ought to disregard his testimony, because he has been contradicted by several witnesses for appellant, as to condition of the chain and as to the fact he testified to—that the chain was wrapped around the brake-staff and was detached from the brake-rod beneath the car. The following are the witnesses who testified for appellant about the condition of the appliances: Curlin, the conductor in charge of train, who testified there was no eyebolt there. " I never had hold of chain; looked and found it all right, except eyebolt gone; it did not look like a worn-out chain; I did not look at it sufficiently to tell its condition as to apparent soundness; can't say there was not a link or two gone from end of chain, or whether it was old or not; did not examine to see if chain was worn." Younghouse, appellee's car inspector at Murphysboro, testified he examined car on the morning accident occurred; that the chain was an ordinary chain, in pretty fair condition; was not a bad chain.

On cross-examination he testified the train was all ready to go when he saw the chain; that he did not go between the cars because he did not want train to pull out on him, and yet after saying this, he testified he examined chain pretty close, and what he saw of the outside of the chain was all right, it was sound. Barnes, freight conductor, in the em-

ploy of appellant, testified he examined chain carefully at East St. Louis, on arrival of the train there, and said, " I don't know whether bolt broke, or the nut came off; it was one of the two; the chain seemed to be good and all right; it seemed to be the right length; it seemed to me that the bolt caused all the trouble; I got down and looked at chain." On cross-examination witness testified eyebolt was gone; that he would not swear a link or two links had not been broken out of the chain at any time prior to the time he saw it; that he couldn't say whether there was or not. Homer, freight conductor, in employ of appellant, accompanied Barnes and testified he then examined car; that the eyebolt was gone; examined chain carefully; had it in his hand; it looked to be sound, a good sound chain; did not look to be worn any to speak of. To the question, " I will ask you to state to the jury whether it was an old, worn-out and defective chain ? " witness answered, " Well, the chain was in ordinarily good fix; the chain was good enough; the chain was in good sound condition so far as I could see."

On cross-examination he testified he did not know whether chain was broken or not. Dodd, in charge of defendant's car department at East St. Louis, was present at the time Curlin was there, and testified the eyebolt was gone; that he examined chain pretty closely. It was a good chain, he considered it a good chain of ordinary average size. To the question, " State again to the jury whether this chain was an old, worn-out and defective chain, or otherwise ? " witness answered, " It was a sound chain so far as I could see and I examined it closely." On cross-examination he testified, " I inspected this particular car; they wanted me to make a close examination and I did, and remember distinctly what I saw." That he had " never seen the chain since, don't know where it is, can't tell whether it is here or not; think it was not taken off of car. I did not order it taken off." We have reproduced all the testimony given by those witnesses on behalf of appellant who claimed to have seen or examined these appliances, each of whom

testified the chain was detached from the brake-staff and the majority of whom also testified the eyebolt by which the chain would have been attached to the brake-staff, if the brake had been in proper working order, was gone. This testimony, in connection with the undisputed fact that some part of the brake appliances, when being used by appellee, must have given way, and the testimony of Moore, corroborated as before mentioned, together with the failure on the part of appellant to retain and produce the chain itself for the inspection of the jury, justify the conclusion that the accident occurred by reason of the defective condition of the chain, or eyebolt, or by the latter being insecurely fastened and this, with the other evidence, establishes the fact that appellee was necessarily using the defective appliances in the performance of his duty at the time they gave way, and he was thereby thrown between the cars and injured as averred. Much stress is laid upon the fact that Moore was contradicted by several witnesses as to his statement that one end of the brake-chain was wrapped round the brake-staff and the other detached from the brake-rod. It does not follow, even if he was mistaken in this, that his testimony as to the defective condition of the chain ought to have been rejected by the jury, or that we should discredit it.

The jury, who see and hear the witnesses when testifying, are the judges of the weight and credit to be given to their testimony, and the verdict ought not to be disturbed, unless it is apparent they misunderstood or disregarded the evidence or were misinformed as to the law. This rule has been long established and generally adhered to by the courts of review in this State. In Ill. Cent. R. R. Co. v. Gillis, 68 Ill. 317, the court say: "If any rule of court can be so well established as to be neither questioned nor require the citation of authorities to support it, it is that a verdict will not be set aside whenever there is a contrariety of evidence, and the facts and circumstances by a fair and reasonable intendment will authorize a verdict, notwithstanding it may appear to be against the weight of evidence." So in the case of Calvert v.

Carpenter, 96 Ill. pp. 67, 68, it is said: The judge and jury who try a case have vastly superior advantages for the ascertainment of truth and detection of falsehood, over this court sitting as a court of review. There is an inherent impossibility of determining with any decree of accuracy what credit is due to a witness from merely reading the words spoken by him, even if there were no doubt as to the words. Many of the real tests of truth by which the artful witness is exposed can not be transcribed upon the record, and hence can never be considered by this court. For this reason the rule is firmly established that where, as in this case, there is an irreconcilable conflict in the testimony, this court will not reverse the judgment where the evidence of the successful party, when considered by itself, is clearly sufficient to sustain the verdict.

The ruling in these cases is cited with approval in the case of Shevalier v. Seager, 122 Ill. pp. 567–68, where it is said : " In this state of testimony, it was the peculiar province of the jury to determine which set of witnesses was right, and which was wrong. This the jury did, and the conclusion reached by them has received the sanction of the judge who presided over the trial, and in whose presence and hearing these witnesses gave their testimony. Notwithstanding that, we are asked to set aside the verdict of the jury, sanctioned by the judge who heard the cause, and reverse the decree of the lower court mainly on the ground that the verdict of the jury is not sustained by the weight of the evidence. That we have no right to do. This is abundantly settled by the authorities." The same rule is held in Daley v. Ogden, 28 App. Rep. 319; Brown v. City of Galesburg, Ibid. 321; Lamb v. Johnson, 31 App. Ct. 98. The criticism made as to the instructions given for plaintiff and the contention that the jury were thereby misled or misinformed as to the law, we do not concur in; on the contrary, the instructions given for appellant were more favorable to it than the law warranted, and we perceive no good ground for holding the jury were erroneously instructed to the prejudice of appellant.

The damages are alleged to have been excessive. This is a question also for the jury to determine, and unless the amount is so large as to indicate the jury in fixing that amount were influenced by prejudice or passion, the verdict ought not to be set aside on the ground of excessive damages. They saw the arm and the character of the mutilation, and heard the testimony of plaintiff touching the pain and suffering he had undergone and still suffered from his injury, and we can not say, in view of the evidence, the amount assessed was too large. The last point relied on and to which our attention is invited, is that there is no averment in the declaration that defendant had actual or constructive knowledge of the alleged defects, and such allegation being essential, the omission is not cured by verdict. The record discloses that no demurrer was interposed, but that plea of general issue was filed, and *similiter*, that evidence was introduced without objection by defendant, tending to prove such knowledge, and defendant also introduced evidence tending to prove the converse, and asked for and the court gave on its behalf an instruction that before the jury could find the defendant guilty they must believe that the evidence shows defendant had notice, actual or constructive, of the defective condition of the brake-chain or eyebolt. If the averments were not sufficient, a demurrer should have been interposed, so that the declaration might have been changed and a specific averment inserted.

Where there is any defect, imperfection or omission in any pleading, either in form or substance, which would be fatal on demurrer, yet if the issue joined be such as necessarily required on the trial the proof of the facts so defectively stated or omitted, and without which it is not to be presumed the judge would direct the jury to give, or the jury would have given the verdict, such defect or omission is cured by verdict. 1st Chit. Pl. (7th Am. Ed.) 711, 712; L. S. & M. S. Ry. Co. v. O'Conner, 115 Ill. p. 260; Keegan v. Kinnare, 123 Ill. 280; Sec. 6, Chap. 7, Starr & Curtis' Rev. Stat.

It was averred in each count of the declaration, that defend-

ant carelessly and negligently furnished the defective chain and eyebolt to be used by plaintiff, and by means of its carelessness and negligence in furnishing and providing him with said defective appliance, and permitting it to remain on said car in such unsafe and dangerous condition to be used by him, the injury resulted. It is manifest these facts were material to be proved, and the negligence charged could not be established unless the evidence should show actual or constructive notice to defendant of such defects. The case of E. & T. H. R. R. Co. v. Deed, an Indiana case, 33 N. E. Rep. 355, is not in point; a demurrer to this complaint was interposed, and held to have been erroneously overruled. Joliet Steel Co. v. Shields, 134 Ill. 209, does not present a case like this in material respects, and we can not hold it overrules or was intended to overrule the cases above cited. In Libby et al. v. Schuman, No. 5, Vol. 146, Ad. sheets, Ill. Rep. 548, the Joliet Steel Co. case is referred to, and among other things it is said: "It should also be noticed in that case, the ordinary presumptions which obtain after verdict, and by operation of which a defective statement of a good cause of action is said to be cured, were excluded by an instruction given by the court to the jury. In this case no such instruction was given, so that even if the declaration is one that might have been held to be defective on demurrer, the defect is one which is cured by verdict."

The judgment is affirmed.