E. A. MAYFIELD AND WIFE v. C. C. COTTON AND ANOTHER.

1. M. and C. being partners, and as such involved in debt, M., on the 2d of June, 1870, conveyed certain lands to C., by a deed absolute in form, and purporting a present cash consideration.   Two days afterwards, C. executed an instrument obligating himself, after payment of all debts against the firm, to secure to M.'s wife all property conveyed by M. to

him, or so much thereof as should be left after payment of the debts. C. subsequently sold the lands to B., and M. and wife sue C. and B. for the lands. *Held*, that if M.'s conveyance was for the purpose of discharging the firm debts, C. was bound to apply the property to that purpose alone ; and if C. sold the entire property to B. for the purpose of paying those debts, although a portion of the property would have sufficed, and there was no collusion or fraud imputable to B., then B. acquired a good title. But if C. sold the property after the firm debts had been paid, or for any other purpose than the payment of them, and B. bought it with notice of the equities of M.'s wife, then the latter has the same rights against B. as she had against C.

2. A discretion pertains to the District Courts, to prevent counsel from unnecessarily consuming time in discussing law authorities in the progress of the trial. No inflexible rule can be laid down on this subject; it must be regulated by the courtesy always due from the bench to the bar, and by the frequent necessity that the former shall avail itself of all sources of information.

3. A conversation between two defendants, in the absence of the plaintiffs, was not competent evidence against the plaintiffs.

APPEAL from Karnes. Tried below before the Hon. D. D. Claiborne.

The material facts are sufficiently indicated in the opinion of the court.

*L. S. Lawhon,* for the appellants.

*J. H. McLeary,* for the appellees.

WALKER, J. This is an action brought by Mayfield and wife against Cotton, Brown, and Farley and wife, to recover two tracts of land, conveyed by Mayfield to Cotton, as the plaintiffs' claim, in trust for certain uses. Cotton is the father-in-law of Mayfield. They were partners in business, and, becoming involved in debt to the amount of about six thousand dollars, Mayfield conveyed a large amount of property, among which the lands in controversy, to Cotton, by a deed which appears absolute on its face. But Cotton executed a paper in the nature of a defeasance, in the words and figures following :

" Know all men by these presents, that after the payment of
" all debt against the firm of Mayfield and Cotton, I bind my-
" self to secure to Mrs. E. A. Mayfield, wife of E. A. May-
" field, and her heirs, all property deeded to me by E. A.
" Mayfield, or so much thereof as is left after the payments
" above named.   This 4th of June, 1870.

                                            " C. C. COTTON.
    " Attest—J. N. KEY."

This paper is dated two days after the deed of Elijah A.
Mayfield to C. C. Cotton.   Cotton sold the land to G. W.
Brown, on the 2d of November, 1870, and on the 4th of May,
1871, Mayfield and wife brought this suit, and they allege in
their petition that the deed to Cotton from Mayfield was no
more than an equitable mortgage; that Cotton was bound to
re-convey to Mrs. Mayfield, on the fulfillment of the condi-
tions expressed in the so-called defeasance of June 4th, 1870;
and that Brown had full notice of Mrs. Mayfield's equitable
interest in the property, before he made the purchase from
Cotton.

It is unnecessary that we should discuss the errors assigned.
The principle of law which may probably govern this case, is
easily understood.

If Cotton took the conveyance of Mayfield's property for
the purpose of discharging the debts of the firm, binding him-
self to return any surplus which might remain in his hands
after the debts were so paid, to Mrs. Mayfield, he is bound to
do so, and he had no right to use the property for any other
purpose than that of paying the debt.   He is strictly bound to
apply the proceeds of the property to the payment of the firm
debts; if he has done otherwise, he has violated his trust.

If Brown purchased the property in controversy from Cotton,
with a knowledge of her equities, Mrs. Mayfield has the same
rights against him which she would have against Cotton.   But
if Cotton sold this property for the purpose of paying the
debts of Mayfield and Cotton, Brown would get a good title,
notwithstanding it may not require all the property conveyed

by Mayfield to Cotton, to pay the debts; for it certainly must have been the intention of the parties that Cotton should make sales and collections sufficient to pay the firm debts, and a party purchasing from Cotton without collusion or fraud, would take a good title to any of the property sold to pay the partnership debts.

This doctrine, however, would not apply to one purchasing from Cotton after the firm debts had been paid, with notice of Mrs. Mayfield's right to have the property re-conveyed to her. We have laid down these principles for the future government of the case, should they be applicable to a state of facts found to exist.

We must now turn our attention to the bills of exception. To the first bill of exception, we remark, that the rule of practice is well established which allows attorneys to read the law authorities to the court, in the presence of the jury, during the progress of a trial. The court in its discretion may forbid any abuse of this privilege; the jury is to receive the law from the court, and upon plain principles of law, the court would have a right to forbid tedious and unnecessary reading or discussion.

The authorities in this case which the plaintiff proposes to read may have been so well understood by the court that it was deemed unnecessary that they should be read and discussed, to the hinderance of the trial, for the enlightenment of the court. In matters of this kind, no positive inflexible rule can well be laid down. The court should be allowed, however, to protect the interests of litigants and the public against any unnecessary consumption of time in the discussion of law authorities in the presence of juries, and in the progress of jury trials. The court should understand the law well enough to give it to the jury, unassisted by counsel; yet, a courtesy due from the bench to the bar at all times, and the frequent necessity of the court availing itself of every source of information, should regulate this matter.

Should it appear to us by bill of exception that the court

had charged the law erroneously, after the authorities had been offered which would have properly enlightened the court, we should regard it as a plain case of obstinate ignorance ; but we do not know that it would be any better reason for reversing a judgment, should the court thus misjudge the law, than if the same errors should be committed without counsel having offered to enlighten the court as to the law, by reading and discussing authorities in the progress of the trial.

The second bill of exceptions is well taken. A conversation between Brown and Cotton, two of the defendants, not conducted in the presence of the plaintiffs, was manifestly incompetent evidence ; and for this error in the rulings of the court, the judgment must be reversed. It is unnecessary to notice any of the other bills of exception or assignments of error. The judgment of the District Court is reversed and the cause remanded.

Reversed and remanded.