Bromwell, J.
This cause comes into this court on petition in error from-the police court of the city of Cincinnati, Ohio, which recites:
‘ ‘ On the first day of May, 1909, by the judgment of the police court of the city of Cincinnati, Ohio, said court being then and there open for the transaction of business, and said day being at the April term, A. D. 1909, of said court, the defendant in error recovered a judgment against the plaintiff in error in a certain action and prosecution, wherein the defendant in error was plaintiff and the plaintiff in error was defendant, and being cause No. - of the records of said court. A transcript of the record and proceedings of said court in said cause, duly certified, is hereto attached and made part hereof, marked' ‘Exhibit A, ’ The error complained of is as follows-: - -
*111 "First. That the finding, conviction and judgment of said court were contrary to the evidence.
"Second. That the finding, conviction and judgment of the said court -were contrary to law.
‘ ‘ Third. That the evidence failed to show that the defendant was guilty of -assault and battery.
"Fourth. That the evidence failed to show any intentional striking of the party injured by defendant below.
"Fifth. That the evidence showed that there was no intentional striking of the party injured.
"Sixth. That the court erred in not finding the defendant not guilty.
"Seventh. That the court erred in overruling the motion of the defendant below for a new trial.
"Eighth. Other errors upon the record.”
The transcript from the police court shows that plaintiff in error was arrested, tried and found guilty of a charge of assault and battery upon one William L. Logan, on or about the 15th day of April, 1909, and was sentenced to pay a fine of one hundred dollars and the costs of the proceeding.
The testimony, as set out in the bill of exceptions, so far as necessary to be considered for the purposes of this case, establishes beyond any reasonable doubt the following statement of facts:
First. That the plaintiff in error was about- the hour of six o’clock and twenty-six minutes p. m., on the 14th day of April, 1909, running his automobile -on Fairfax avenue, Walnut Hills, a residential part of the city of Cincinnati.
Second. That at the same time and close to the place of the accident a wagon was being driven upon said avenue, and that said Ryan ran from behind the wagon just in time to get in front of the passing automobile of plaintiff in error and was struck by it.
Third. That there was no actual intent by plaintiff in error to strike or otherwise injure said Ryan.
Fourth. The only evidence as to the speed of the auto at the time of the accident was that contained in the testimony of William D. Downey, an eye-witness, who said "It was going pretty fast. I should.say about forty miles an hour as far as I could *112 judge” (this statement was. not contradicted by any other witness) ; and the testimony of Edward Joseph Cass, who stated that he was an automobile owner who drove his own car, and said that the auto of plaintiff in error- was going “quite fast”; that it was “faster than he usually drove” but that “he couldn’t estimate the speed.” It may be assumed from this testimony that at .the time of the accident the car was moving at a rate of more than fifteen miles an hour.
Fifth. That the boy, William L. Ryan, was, at the time and place named, struck by said auto and more or less seriously injured.
The following statute was at the time of the alleged unlawful act complained of in full force and effect, viz.:
91 O. L., p. 541. “Sec. 14. No person shall operate a motor vehicle on the public roads or highways of this state at a rate of speed greater than is reasonable or proper, having regard to width, traffic and the use of the highway and the general and usual rules of the road, or so as to endanger the property or life or limb 'of any person or the safety of any property.
“Sec. 15. In no event shall any automobile, motor cycle or other motor vehicle be operated at a greater rate of speed than eight miles an hour in the business and closely built up portions of any municipality of this state, no more than fifteen miles an hour in the other portions of such municipalities, no more than twenty miles an hour outside of such municipalities, which rates of speed shall not be diminished nor prohibited by an ordinance, rule or regulation of any municipality, board or other public authority, but municipalities may by ordinance define what are the business and closely built up portions of such municipalities.
“See. 25. Any violation -of Sections 14, 15 and 16 of this act shall be deemed prima facie evidence of a misdemeanor punishable by. a fine not exceeding twenty-five dollars ($25.00) for a first offense and by a fine not less than twenty-five dollars ($25.00) and not exceeding fifty dollars ($50.00) for a second •offense, and by a fine of not less than fifty dollars ($50.00) and not more than one hundred dollars ($100.00) or imprisonment for not more than thirty days for a third offense, and for any subsequent offense, within one year, imprisonment not less than ten days nor more than thirty days.”
As this is not a prosecution for violation of the above named act the question as to whether the offense if committed was a first, *113 second or third offense is not material, as the offense complained of is an assault and battery which is defined and penalty fixed by Section 6823, Revised Statutes, the language of which is as follows:
“Sec. 6823. Whoever unlawfully assaults or threatens another, in a menacing manner or unlawfully strikes or wounds another, shall be fined not more than two' hundred dollars or imprisoned not more than six months, or both.”
The plaintiff in error undertakes-, in his brief, to state the issue in this case in the following words:
“Can a person be guilty of assault and battery who, unintentionally and accidentally, injures a person even though, at the time, he is violating the law against fast driving, whether it be of automobiles or horses?”
We think that this statement does not represent exactly the ultimate question in this case. To be more accurate, the issue seems to be:
“Can a person be guilty of assault' and battery who, while intentionally violating a statute of Ohio prohibiting the driving of an automobile beyond certain speed limits, upon the street of a municipality in this state, unintentionally runs into, strikes and injures a person rightfully passing upon or across said street ? ’ ’
The difference between the two statements will be readily perceived. The first makes the intent relate directly and actually to the striking; the other makes- the intent relate back to the commission of the unlawful act, but dispenses with the' actual intent to do the striking.
That there must be intent in one or the other way, in order to constitute the offense of assault and battery, there can be no doubt. The principle is elementary that intent is one of its essential elements. See the following authorities: Van Vactor v. State, 113 Ind., 280; Richels v. State, 1 Sneed (Tenn.), 608; McClain Criminal Law, Section 239; Pratt v. State, 49 Ark., 179; People v. Dodel, 77 Cal., 293; Russell on Crimes, Section 750; State v. Swails, 8 Ind., 525; State v. Carver, 89 Me., 74; U. S. v. Hand, 26 Fed. Cas., No. 15297, p. 104; Grayson v. State, 37 *114 Tex., 229; State v. Sims, 3 Strob. (S. C.), 137-139; State v. Knapp, 50 Bull., 28.
It is equally well settled that there are no common law offenses in Ohio. Only such acts as are prohibited by the statute are unlawful. (See eases cited in my reply to grand jury found in 5th N. P. — N. S., 34-37.)
We must look, therefore, to the statute which I have cited (Section 6823), to determine what act or acts constitute an assault and battery, and from the language of that section, as construed by the courts, determine the essential elements of the offense.
The definition or description contained in the statute is very brief, consisting of but the five words “unlawfully strikes or wounds another.” It is evident that the word “unlawfully” is the one which will chiefly require interpretation.
The same word is found in the section which defines manslaughter, reading as follows:
“See. 6811. Whoever unlawfully kills another except as provided in the last three-sections is guilty of manslaughter.”
This word has been construed by our Ohio courts in a number of case to which I shall hereafter refer.
Some of the text-writers and a number of the courts have adopted the view that one of the essential elements of assault and battery is that the striking or wounding shall be done without the consent or permission of the injured person; and. that if he consents to the blow, either by his own act or by agreement and actual permission, the striking or wounding is not such an unlawful act as will constitute a battery. Thus McClain Criminal Law, Section 249, adopts the dictum in the following Ohio case, Smith v. State, 12 O. S., 469:
“An assault implies force upon one side and repulsion or, at least, want of assent, upon the other. An assault, therefore, upon a.consenting party would seem to be a legal absurdity.”
But the Supreme Court explains that case in Barholt v. Wright, 45 O. S., 180, and limits the application of the former decision to the peculiar circumstances of that particular con *115 troversy, quoting and approving Cooley on Torts, in which the statement is made that:
“The rule of law is therefore clear and unquestionable that consent to an assault is no justification.”
The court in the Barholt ease referred to one of the decisions cited by plaintiff in error in this ease in the following words', Barholt v. Wright, 45 O. S., 181:
“Neither is the case of Champer v. The State, 14 O. S., 437, at variance with the principle upon which the plaintiff below seeks a recovery. The ease seems to have been somewhat misapprehended by the courts of some of the states as well as by some text-writers. By the statutes of this state a distinct offense is made of an affray or agreement to fight and the effect of the holding is that where such an offense is committed, the indictment must be for an affray and not for an assault and battery.”
The Champer case referred to is as follows, Champer v. The State of Ohio, 14 O. S., 437:
“Held: An indictment against A for an assault and battery upon B, is not sustained by evidence that A assaulted and beat B in a fight at fisticuffs, by agreement between them.
“An assault and battery and an affray are distinct offenses under the statute, punishable by different penalties.”
Outside of the fact that this was a per curiam decision, if is clear that it had reference to the character of the evidence offered to sustain the charge, rather than the right of the state to maintain either an action for an affray or an action for assault and battery.
But even if we concede that the explanation of the Champer case contended for by plaintiff in error is correct it 'has no application to the ease at bar. The affray statute prior to the recent recodification was Section 6890, reading as follows:
“Sec. 6890. Any two persons who agree, and willfully fight or box at fisticuffs or engage in any public sparring or boxing exhibition without gloves or with gloves of any kind, # * * shall be deemed guilty of an affray. ’r * * *
, The most casual inspection of the two sections, viz., Section 6890 and Section 6823, shows that they create distinct offenses *116 and, as in the Champer case, the court would be justified in holding that the evidence showing an affray would not be sufficient to support an indictment for an assault or vice versa.
But a still stronger diversity exists between the statute regulating the speed of automobiles and the assault and battery statute, and one can not be a'substitute for the other.
The former makes the mere speeding at the prescribed rate an offense, whether any person is injured by reason of its violation or not; the latter requires that some injury; however slight, shall have resulted from its violation.
The following two contingencies might arise, which are not in this ease and which may be eliminated from consideration:
1. The speed statute may be violated but .no one injured as a result. A prosecution may be had under 91 O. L., p. 541, Section 14, but not under Revised Statutes, Section 6823.
2. The speed statute may not be violated but a person’ injured by the negligence of the auto driver; then unless the injury was intentionally and maliciously caused, no action could fye- had under- either section.
But the case we have in' hand presents the third contingency, viz.:
3. Where the speed statute is violated and as a natural or probable result a person is injured. There is no doubt that a prosecution would lie under 91 O. L., p. 541, Section 14. But the question raised here is "may a prosecution also lie for violating Section 6823 under the circumstances of this case?
Since the decision in the Johnson case, it is settled in this state that .a criminal prosecution- can not be maintained for man-daughter arising from negligence unless the accused was at the time engaged in the violation of statutory laws. The syllabus in that case and extracts from the.opinion of the court are as follows, Johnson v. State, 66 O. S., 59:
"Syl. In .a prosecution for manslaughter wherein the state relies for conviction on the ground that the deceased was killed unintentionally, while the slayer was in the commission of an unlawful^ act, it must be shown that the alleged unlawful act is prohibited by law; and it is not sufficient to establish that such act so engaged in was a crime at common law, or one of gross and culpable negligence.”
*117 P.69: “In our judgment the unlawful act', the commission of which gives color and character to the unintentional killing, is an act prohibited by law, and that such is the natural meaning of the term or clause when used in the parlance of criminal jurisprudence. ’ ’
The unlawful act referred to must undoubtedly be one prohibited by statute and not by mere ordinance of a municipality. On this point I think the reasoning of Judge Kinkead in the Collingsworth ease, decided a little over a year ago, is conclusive. He said in State v. Collingsworth, 8 N.P. (N.S.), 383:
‘ ‘ Syl. To constitute manslaughter the accused must have been guilty of the commission of an unlawful act, made so by state law resulting in a death. , The violation of a city ordinance is not sufficient.
“Syl. 2. An ordinance making it a misdemeanor to cause a vehicle to collide with a person is, therefore, not admissible as evidence in a prosecution for manslaughter because of a death growing out of such collision.”
P. 384: “By way of illustration, for instance, we may consider the violation of the state laws now regulating automobiles. If a man in running an automobile violates a state law and by reason of such negligent violation runs into another and causes his death, in my judgment that would be an illustration of manslaughter within this statute as defined by the appellate courts. ’ ’
P. 385: “In the crime of manslaughter as it existed in common law there were two classes of acts, malum in se and malum prohibitum. The unlawfulness of the act in law supplied the intention and while we so frequently say as a general proposition that no crime can be committed unless there has been an intent, it does not mean that there shall be an actual intent. The example mentioned of the violation of the statute law regulating the rate of speed of an automobile is .an illustration of that rule. The unlawfulness of the act supplies the intent. ’ ’
Can any good reason be shown why this argument and the holdings of the two courts in the two cases just cited shall not apply equally to such a condition as arises in the present case? The words unlaivful acts are found in both -the manslaughter and the assault and battery statutes and are we think used in the same sense, viz., the violation*of a penal statute. And if the unlawfulness of the act supplies the place of the actual intent *118 required to sustain a charge of manslaughter the same words should, by any fair construction, equally raise the presumption of intent required in the case of a charge of assault and battery.
The Indiana courts seem to have arrived at the same conclusion as to civil liability in the case of Mercer v. Corbin, 117 Ind., 450:
“Syl. 1. There may be an actionable assault and battery although there is no actual or specific intent to commit that offense:
‘ ‘ Syl. 2. One who rudely and in such a reckless manner as to show a disregard of consequences rides his bicycle against a person standing upon a town sidewalk is liable for an assault and battery, the intent being implied.
“Syl. 3. A bicycle is- a vehicle within the meaning of the law and therefore under Sec. 3361, Rev. Stat., 1881, its use upon a public sidewalk is unlawful and its rider liable for an injury inflicted upon a footman although the act be unintentional.5 ’
P. 455: “ If we are right in holding that the appellant, while riding his bicycle along the sidewalk was engaged in the perfomance of an'unlawful act, another important element is added to the appellee’s case making the right of recovery entirely clear, for a man who does an unlawful act is liable for the consequences, although they may not have been intended.” Citing Peterman v. Haffner, 59 Ind., 130; Hood v. State, 56 Ind., 263; Binford v. Johnston, 82 Ind., 426; and Weick v. Lauder, 75 Ill., 93. See, also, Palmer v. Ry. Co., 112 Ind., 250.
We must be particular to discriminate between an intent im- . plied from mere recklessness or wantonness, not violating a penal statute, and the intent implied from doing an unlawful act as just defined. We have no common law offenses in Ohio, and can predicate a criminal liability only upon statutory provision. I-Ienee mere negligence, recklessness or wantonness alone can hot in this state raise the implication of intent which is required to sustain a charge of assault and battery.
True there are .in other states decisions and there are opinions of text-writers, based upon the common law or statutes of those states, which support the view that a charge of manslaughter or a charge of assault and battery may be prosecuted where the *119 acts are solely those of negligence, recklessness or wantonness, as, for instance, Welch v. Durand, 36 Conn., 182 and 185; 1 Bish. Crim. Law, Ch. 20, Section 313; People v. Keefer, 18 Cal., 638; People v. Rohel, 92 Mich., 165; Malone v. State, 77 Miss., 812; State v. Nash, 86 N. C., 650; Crowley v. State, 78 Tenn., 284; Hughes Crim. Law, Section 2469.
Bnt sneh decisions and statements have no controlling effect in this state in the face of constructions to the contrary made by our own' courts.
I call attention to the following (out of many) cases as authority for the view that intent to do a specific and actual injury need not be alleged or proven if the injury was a natural and probable result of a precedent or concurring violation of a statute; that one committing an unlawful act may be presumed to intend such results and that the only intent which is essential and requisite in a charge of assault and battery is the intent to do the original unlawful act which directly caused the injury.
Weick v. Lauder, 75 Ill., 93:
‘ ‘ Syl. 2. Where an act unlawful in itself is done, from which an injury may reasonably and naturally be expected to result, the injury when it occurs may be traced back and visited upon the original wrongdoer and this upon the principle that every person shall be held liable for all those consequences resulting from his unlawful act which might have been foreseen and expected as the result. ’ ’
Binford v. Johnson, 82 Ind., 427:
“Syl. 5. One who sells dangerous explosives to a child knowing that they are to be used in such a manner as to put in jeopardy the lives of others, must be taken to contemplate the probable consequences of his wrongful act, and a probable consequence of such sale is that the buyers or their associates will be injured thereby.”
Com. v. Lister, 15 Phila., 405:
“Syl. The jury returned a special verdict finding that the defendant, intending to shoot his pistol into the floor of a Pullman ear, had shot the prosecutor in the foot without intending to injure him or any other person. Held: That defendant was guilty' of unlawfully and maliciously inflicting grievous hodily *120 harm on the prosecutor. Legal malice is that general malignity and recklessness of the lives and personal safety of others which proceeds from a heart void of a just sense of social duty and fatally bent on mischief.”
Referring to the reckless shooting of a pistol in a crowded car the court said (p. 407) : •'
“But where injury does result from it, it is no answer to the outraged law for its violator to say ‘I did not intend to injure anyone henee I should not be punished.’ To give heed to such answer would put a premium on criminal recklessness and subject every citizen to the liability of being killed in order to gratify the spirit of joking of -the criminal classes. ’ ’
P. 408 : ‘ ‘ The discharge of the pistol being for an unlawful and malicious purpose, resulting directly in injury to the prosecutor, the law transfers the malice of the orignal intent to the result immediately caused by the unlawful and malicious act of shooting.
“In legal■ contemplation it is of no consequence that the defendant did not intend to injure the prosecutor or other persons if the law characterizes what he did as unlawful and malicious. In such a case the law holds the defendant answerable for the result, whatever it may be. And it is to be observed that the word ‘intent’ or ‘intend’ is not in the act of assembly. The words are ‘unlawfully and maliciously.’ ”
In some of the text-books and decisions a distinction is made between unlawful acts which are mala in se and those which are mala proMbiia. Upon this point I cite the following:
1st Bishop Grim. Law, Section 331:
“But in these cases of an unintended evil result, the intent whence the act accidentally sprang must, it seems, be, if specific, to do a thing which is malum in se and not merely malum prohibitum. Thus Archibold says: ‘ AVhen a man in the execution of one act, by misfortune or chance, and not designedly, does another act, for which, if he had willfully committed it, he would be liable to be punished; in that ease if the act he was doing were lawful, or merely malum prohibitum, he-shall not be punishable for the act arising from misfortune or chance; but if malum in se, it is otherwise. ’ ’
Clark & Marshall, Vol. 1, Section 204, p. 421:
“AVhile there is very little authority on the question there *121 seems to be no good reason to doubt that a person may be guilty of criminal assault and battery if he intentionally does an act which, by reason of its wanton and grossly negligent character exposes another to personal injury and does in fact cause such injury. ’ ’
Section 205: ‘ ‘ If a personal injury is intentionally done another by one who is engaged in an unlawful act, he is not necessarily excused on the ground of accident. If the act is a crime and malum in se and the injury is a natural or probable consequence of the act he is guilty of assault and battery. * * * The act must be malum in se and not merely malum prohibitum. Therefore one who drives over another unintentionally is not guilty of a criminal assault and battery apart from any question of negligence, merely because he is driving at a speed prohibited by a city ordinance.”
Commonwealth v. Adams, 114 Mass., 323:
‘1 Syl. One who negligently drives over another is not guilty of a criminal assault and battery, although he does it while violating a city ordinance against fast driving. ’ ’
P. 323: “It is true that one in the pursuit of an unlawful act may sometimes be punished for another act done without design and-by mistake, if the act done was one for which he could have been punished if done willfully. But the act, to be unlawful in this, sense, must be an act bad in itself, and done with an evil intent; and the law has always made this distinction: that if the act the party was doing was merely malum prohibitum he shall not be punishable for the act arising from misfortune or mistake; but if malum in se it is otherwise. * * *
“Acts mala in se include, in addition to felonies, all breaches of public order, injuries to person or property, outrages upon public decency or good morals, and breaches of official duty, when done willfully or corruptly. Acts mala prohibita include any matter forbidden or commanded by statute, but not otherwise wrong (3 Greenleaf Evidence, Section 1). It is within the last class that the city ordinance of Boston falls, prohibiting driving more than six miles an hour in the streets.
“Besides, to prove the violation of such an ordinance, it is not necessary to show that it was done willfully or corruptly. The ordinance declares a certain thing to be illegal; it therefore becomes illegal to do it, without a wrong motive charged or necessary to be proved; and the court is bound to administer the penalty, although there is an entire want of design. * * * *122 It is therefore immaterial whether a party violates the ordinance willfully or not. The offense consists, not in the intent with which the act is done, but in doing the act prohibited, but not otherwise wrong. It is obvious, therefore, that the violation of the ordinance does not in itself supply the intent to do another act which requires a criminal intent to be proved.”
This last cited case is especially relied upon by plaintiff in error in argument and brief in support of his contention that an intent to commit a resulting injury can not be predicated on a violation of the statute regulating the speed of automobiles.
But it is clear that under the Collingsworth decision just announced in the Ohio Law Reporter of June 20, 1910, p. 87, the same finding would have been had in this state as in the Adams case just cited, the charge in the latter being based upon a violation of an ordinance and not of a statute. In this view of the law the two decisions may be consistent even if the dictum of the Supreme Court of Massachusetts as to the distinction between mala in se and mala prohibita is not concurred in, in this state. The conclusion of that court may have been right even if its reasons for such conclusions are wrong.
I doubt very much whether in such a case as this the law of Ohio recognizes any distinction between acts which are mala in se and acts which are mala prohibita. There may be a distinction between acts prohibited by statute and those prohibited by ordinance, for the reason given by Judge Kinkead in the Collinsworth case cited heretofore. I am not so sure that the offense created by the speed statute might not even be classed among those defining acts mala in se in view of the continual menace to life and property which attend the reckless running of these vehicles. The only excuse which the Legislature could have for the enactment of this law was this menace to public order and the safety of individuals in their lives, limbs and property. The act is no hardship to a law-abiding owner or driver of autos running his machine within the limits of speed permitted. But to the reckless it holds out the fear of punishment, not alone for the violation of the speed restrictions but for such injuries as may naturally and probably follow such violation. Such, at any rate, seems to me to be the proper view to be *123 taken of the Johnson decision which drew no such distinction between acts mala in se and those prohilita, but said clearly that a charge of manslaughter could not lie in that case because of the absence of a statute making the running of bicycles at a high rate of speed in a crowded street an offense.
In this case the statute does exist and counsel for plaintiff in error admits that if the child Logan had died from the injuries he received, the driver of the auto could have been held for manslaughter. I can see no reason why he is not equally liable fer an assault and battery where the injury fell short of causing his death.
The proceedings in the police court seem to be regular; the matters complained of in the petition in error have not been established and the judgment of that court and its sentence are affirmed.